UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOSE A. PEREZ,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **XAVIER BECERRA**, *in his official capacity as Secretary of Health and Human Services, et al.*, <br><br> Defendants. | Case No. 1:21-cv-02039-TNM |

**MEMORANDUM OPINION**

Proceeding *pro se*, Jose and Nancy Perez challenge the U.S. Department of Health and Human Services' COVID-19 policies on several grounds. *See* Sec. Amended Compl. (Compl.), ECF No. 36. In short, the Perezes want to avoid a COVID-19 vaccination. *See* Compl. at 48–49.[1] They also want the Court to rescind certain decisions of the Department, restrict its authority over public health emergencies, and cut its research funding. *See id.*

The Department moves to dismiss contending, among other things, that the Perezes lack standing. *See* Mot. to Dismiss, ECF No. 38. The Court agrees and will grant the Department's motion. The Court will also deny a motion to intervene filed by Virna Fender as Fender does not have a legally protected interest in this action. *See* Mot. to Intervene, ECF No. 42.

---

[1] All pagination refers to the page numbers generated by the Court's CM/ECF electronic filing system.

## I.

The Perezes' Complaint is a patchwork of factual, statutory, and constitutional allegations that the Court struggles to piece together. Throughout the Complaint, the Perezes return to several themes:

- The Department requires them to get vaccinated and wear masks. *See, e.g.*, Compl. at 1 (claiming the federal government "is sending federal agents to knock on doors trying to convince Americans that they must vaccinate"); *see also id.* at 31, 40–42, 45.

- COVID-19 vaccines are harmful. *See id.* at 13–21.

- The Department "abandoned" its statutory mission by "causing viruses to be engineered [to] increase their pathogenicity." *Id.* at 2; *see also id.* at 4, 7–13.

- The Department acts at the behest of the pharmaceutical industry and seeks to enrich it even though cheap alternatives to vaccines exist. *See id.* at 21–31. The Department facilitated this by declaring a public health emergency. *See id.* at 24.

- The Department claims there is a pandemic yet allows millions of undocumented, unvaccinated aliens to enter the country. *See id.* at 31–32.

- The Department engaged in a "huge disinformation campaign unnecessarily scaring the population and causing serious economic damage." *Id.* at 3; *see also id.* at 32–40, 42–43.

The Perezes seek a declaration that the Department lacks the authority to announce a public health emergency and cannot force them to get vaccinated. *See id.* at 48–49. They ask that the Department conduct a serological test on them for COVID-19 antibodies and, if the test reveals none, that the Department give them the Baciel Calmette-Guerin (BCG) vaccine instead of a vaccine designed to combat COVID-19. *Id.* They want the Department to inform them of the nature and consequences of a COVID-19 vaccine as well as alternatives to the vaccine. *Id.* They seek a so-called vaccine passport so they can freely travel and visit establishments that require proof of vaccination. *Id.* Finally, they demand that the Department recalculate COVID-

19 deaths and new cases under the Paperwork Reduction Act (PRA) and the Information Quality Act (IQA) and cease gain-of-function (GOF) research.

The Department responds that the Perezes cannot show injury, causation, or redressability as required for standing. *See* Defs.' Mem. in Supp. of Mot. to Dismiss at 5–12 (Defs.' Mem.), ECF No. 38-1. The Department's motion is now ripe.

## II.

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving that the Court has subject matter jurisdiction to hear its claims. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). That includes showing that the plaintiff has standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "accept as true all of the factual allegations contained in the complaint" and draw all reasonable inferences in favor of the plaintiff. *Brown v. Dist. of Colum.*, 514 F.3d 1279, 1283 (D.C. Cir. 2008).

The Perezes proceed without counsel. This triggers special solicitude for them. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). More, courts assess a *pro se* complaint "in light of all filings, including filings responsive to a motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).

But *pro se* plaintiffs must still adequately plead their complaint consistent with the edicts of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). *See Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009). The Court thus does not accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements." *Yellen v. U.S. Bank, Nat'l Ass'n*, 301 F. Supp. 3d 43, 47 (D.D.C. 2018) (internal citation omitted).

### III.

To establish standing, the Perezes must allege: (1) that they have suffered an injury in fact that is both concrete and particularized and actual or imminent; (2) that the injury is fairly traceable to the District; and (3) that a favorable decision is likely to redress the identified harm. *See Sabre, Inc. v. DOT*, 429 F.3d 1113, 1117 (D.C. Cir. 2005). The Perezes bring many claims and must show standing for each claim and each form of relief sought. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

Start with injury. The Perezes' alleged injuries fall into three broad categories. *First*, vaccine- and mask-related injuries. The Perezes claim that the Department requires them to get vaccinated, Compl. at 1; that these vaccines are harmful, *id.* at 13–21; that the Department refuses to consider alternatives, *id.* at 21–31; and that the Perezes cannot travel without vaccination because so many establishments require vaccine passports, *id.* at 4, 45. They also argue the Department requires them to wear masks. *See id.* at 45.

Not so. The Perezes can show none of these injuries because they do not point to any regulation or policy from the Department requiring them to obtain COVID-19 vaccines or wear masks. Nor do they plausibly allege that such a requirement is imminent.

Consider vaccines first. With no requirement that the Perezes receive the vaccine, they cannot allege injury based on their belief that the vaccine is harmful. Nor can they allege injury based on the Department's ostensible refusal to consider alternatives because the Perezes may seek alternative treatments. Indeed, they detail the regimen they take to avoid COVID-19 and do not suggest that the Department interferes. *See id.* at 25.

Consider also the Perezes' allegations about vaccine passports. They allege that "[m]any merchants and government entities" demand these passports before entry into certain facilities. *Id.* at 46. The Perezes contend this violates their "right to travel," the Commerce Clause, the Rehabilitation Act, and the Americans with Disabilities Act. *Id.* at 4. But again, the Perezes point to no *federal* policy—much less a policy of the Department—that mandates these passports. A plaintiff can establish standing based on the actions of third parties if the federal government's policies had a "predictable" effect on these parties. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019). But the Perezes allege no facts suggesting the Department's approval of certain COVID-19 vaccinations had any such effect.

Now consider masks. The Perezes allege the Department "violate[s] the Perez' right to liberty when they demand the Perez' wear a face mask." Compl. at 45. The Perezes point to no Department requirement that they wear face masks. True, the Department has required masks at times. For example, recall the widely touted federal "mask mandate" applied to "people on public transportation conveyances or on the premises of transportation hubs." Ctrs. for Disease Control and Prev., *Order: Wearing of face masks while on conveyances and at transportation hubs*, Feb. 25, 2022.[2] But the Perezes do not claim they have used public transportation or been present at transportation hubs where this mandate applies. *See id.* Nor do they cite any other Department requirement that requires them to wear masks. On the contrary, the Perezes state they do not wear masks. *See* Compl. at 25.

*Second*, injuries related to the Department's research funding. The Perezes allege that the Department "engineered" the virus that causes COVID-19 to "increase [its] pathogenicity." Compl. at 2–3, 7–13. The Department did this, the Perezes say, by supporting gain-of-function

---

[2] *Available at*: https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.

research in Wuhan, China. *See id.* at 8. But these facts, even if true, do not show injury to the Perezes in a particularized manner. An individual "seeking relief that no more directly and tangibly benefits him than it does the public at large [] does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74.

The relief the Perezes seek for this supposed injury underscores this point. They ask that the Court find 18 U.S.C. § 177(b)—part of the Biological Weapons Anti-Terrorism Act of 1989—unconstitutional. Section 177(b) provides an affirmative defense to those sued by the United States for violating restrictions on biological weapons. Declaring § 177(b) unconstitutional would not benefit the Perezes any more than the population at large. More, this statute has no applicability here because the United States is not suing the Perezes or anyone else.

*Third*, injuries related to misinformation. The Perezes claim the Department has engaged in a misinformation campaign that hurts the economy, exaggerates the effects of the pandemic, and benefits pharmaceutical companies offering COVID-19 treatments. Compl. at 3, 21–40, 42–43. The Department facilitates this misinformation campaign, in part, by declaring a public health emergency in which they anointed "themselves the arbiters of the truth and any dissenting doctor[] or scientist[] who opposed their narrative was a 'dangerous disinformer' who should have their license revoked."[3] *Id.* at 24; *see also id.* at 37–40.

---

[3] The Department's declaration of a public health emergency is undermined, say the Perezes, by its decision to let in millions of undocumented, unvaccinated aliens. *See* Compl. at 31–32. But this inconsistency—even if it exists—does not harm the Perezes. And if it did, the Perezes do not explain how it harms them uniquely compared to any other individual. *See Lujan*, 504 U.S. at 573–74 (stating that an individual "seeking relief that no more directly and tangibly benefits him than it does the public at large [] does not state an Article III case or controversy").

Once again, the Perezes do not explain how this hurts *them*. They allege that other treatments are more effective against COVID-19 than vaccines. *See id.* at 25–31. But the Perezes and others are free to pursue those treatments.

The Perezes also allege an informational injury, claiming the Department failed to follow the PRA and IQA. *See id.* at 37–38. This harms them, they claim, because the Department is "failing or refusing to provide the accurate information the Perez' need for an informed consent." *Id.* at 38. But the Perezes do not want to get a COVID-19 vaccination, so they allege no scenario in which informed consent is relevant to them. Even more, the IQA does not provide the Perezes with any private right of action to sue. *See Miss. Comm'n on Env't Quality v. E.P.A.*, 790 F.3d 138, 184 (D.C. Cir. 2015) ("[A]lmost every court that has addressed an Information Quality Act challenge has held that the statute creates no legal rights in any third parties.") (cleaned up). Nor does the PRA. *See Alegent Health-Immanuel Med. Ctr. v. Sebelius*, 34 F. Supp. 3d 160, 169 (D.D.C. 2014) ("[T]he PRA does not create a private right of action.").[4]

Without a concrete injury to themselves or the threat of such injury, the Perezes fail to satisfy the threshold requirement of showing an injury in fact. *See Lujan*, 504 U.S. at 560. That alone is enough to doom their Complaint.

---

[4] In their opposition brief, the Perezes cite *Cruzan v. Missouri Department of Health*, 497 U.S. 261, 269 (1990), and *Akins v. FEC*, 66 F.3d 348, 351 (D.C. Cir. 1995), to show that an informational injury can confer standing. *Cruzan* involved the informed consent doctrine. But this doctrine is irrelevant here because the Department is not forcing the Perezes to receive a vaccination nor do the Perezes want to receive one. And the D.C. Circuit vacated *Aikins* on rehearing en banc. *See Aikins v. FEC*, 74 F.3d 287 (D.C. Cir. 1996) (en banc). Even still, the case does not help the Perezes because there the plaintiffs sought information within the "zone of interests" intended to be served by the statute. *Akins*, 66 F.3d at 351. Here, Plaintiffs do not have a cause of action under the AQI or the PRA.

Even if the Perezes could show injuries, they cannot establish traceability or redressability for most of them. Vaccine requirements, mask mandates, and vaccine passports are typically managed at the local and state level. The Perezes thus cannot trace these requirements to the Department. *Accord Null v. U.S. Food & Drug Admin.*, No. CV 09-1924 (RBW), 2009 WL 10744069, at *3 (D.D.C. Nov. 10, 2009) ("[J]ust because the federal government approved a vaccine as safe for human consumption, [it] cannot be said to be the action that is allegedly creating the threat of the actual and imminent harm complained of by the plaintiffs, when it is the State of New York which is actually requiring the plaintiffs to submit to the vaccination."). By the same token, the Court could grant the relief the Perezes seek and South Carolina, the Perezes' home state, could implement its own requirements for vaccines, masks, and vaccine passports.[5] Thus, the relief the Perezes seek does not redress their alleged injuries.

Finally, the Court observes that the Perezes failed to address the Department's standing arguments in their opposition to the motion to dismiss. *See generally* Pls.' Reply at 40. So they conceded these arguments. *See Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."); *see also Stubbs v. L. Off. of Hunter C. Piel, LLC*, 148 F. Supp. 3d 2, 4 (D.D.C. 2015) (applying concession principles

---

[5] Indeed, the Perezes recognize the independence of states when they state that South Carolina "has adamantly objected to all federal interference with its public health laws." Mem. in Supp. of Am. Compl. at 4, ECF No. 24-1.

to a *pro se* litigant), *aff'd,* 672 F. App'x 3 (D.C. Cir. 2016). This is independent and sufficient grounds for dismissal.[6]

## IV.

Finally, the Court turns to Fender's motion to intervene. Federal Rule of Civil Procedure 24 governs this motion. The rule requires an intervenor to show, among other things, a "legally protected interest in the action" and that "the action . . . threatens to impair that interest." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (cleaned up). Fender, a nurse, claims an interest in this litigation because her Texas employer, Conroe Health Care Center (CHCC), requires her to get a COVID-19 vaccination as a result of the Supreme Court's ruling in *Biden v. Missouri*, 142 S. Ct. 647 (2022). *Biden* stayed district court injunctions against the enforcement of a Department rule requiring COVID-19 vaccinations of staff at facilities receiving Medicare and Medicaid funding. *See id.* at 650. Because CHCC receives such funding, it requires Fender to receive a vaccine. Mot. to Intervene at 1.

Nowhere in their briefs do the Perezes discuss *Biden*, Medicare and Medicaid funding, CHCC, or mandatory vaccines for healthcare workers. Fender thus has no "legally protected interest in the action." *Karsner*, 532 F.3d 876 at 885. For the same reason, dismissing this case will not impair her ability to pursue separate legal action against the appropriate parties. *See id.*

\* \* \*

---

[6] The Perezes do argue they have standing based on their informational injury and the Tenth Amendment. *See* Pls.' Reply at 52–54. But this is the extent of their standing argument in reply. They do not address the Department's argument that they fail to show injury, causation, and redressability. *See* Defs.' Mem. at 5–12. And in any event, as shown above, the IQA and the PRA do not provide the Perezes with a cause of action.

For all these reasons, the Court will grant the Government's motion to dismiss and will deny Fender's motion to intervene. A separate Order will issue.

Dated: April 13, 2022

TREVOR N. McFADDEN
United States District Judge